1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   JONATHAN CROMP,                    )   Case No.: 1:10-cv-00802- LJO-BAM (PC)
                                        )
12                    Plaintiff,        )   FINDINGS AND RECOMMENDATIONS
                                        )   REGARDING DEFENDANT CONWAY'S
13          v.                          )   MOTION FOR SUMMARY JUDGMENT
                                        )   (ECF No. 52)
14   B. CONWAY,                         )
                                        )
15                    Defendant.        )   THIRTY DAY DEADLINE
                                        )
16   _____ )

17

18               **Findings and Recommendations**

19   **I.    Background**

20          Plaintiff Jonathan Cromp ("Plaintiff") is a state prisoner proceeding pro se and in forma

21   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action was filed on May 10,

22   2004.  (ECF No. 1.)  On February 29, 2012, Plaintiff's complaint was dismissed in part and the action

23   proceeded against Defendant Conway, in her individual capacity, for deliberate indifference in

24   violation of the Eighth Amendment and medical negligence under state law.  (ECF No. 35.)  On June

25   18, 2012, the Court granted Plaintiff leave to file an amended complaint, but denied his request to

26   reopen discovery.  (ECF No. 38.)  On November 5, 2012, Plaintiff filed a first amended complaint,

27   and Defendant Conway filed an answer.  (ECF Nos. 47, 49.)

28

                                          1

1   Currently before the Court is Defendant Conway's motion for summary judgment filed on

2   January 14, 2013.[1]  (ECF No. 52.)  Plaintiff did not file a timely opposition.  The motion is deemed

3   submitted.  Local Rule 230(l).

4   **II.      Legal Standard for Summary Judgment**

5   Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the

6   movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7   judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery

8   and upon motion, against a party who fails to make a showing sufficient to establish the existence of

9   an element essential to that party's case, and on which that party will bear the burden of proof at trial."

10  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the

11  filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The

12  "party seeking summary judgment always bears the initial responsibility of informing the district court

13  of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any, which it believes

15  demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (internal

16  quotations and citations omitted).

17  If the moving party meets its initial responsibility, the burden then shifts to the opposing party

18  to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co.

19  v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this

20  factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

21  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

22  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586

23  n.11.

24  The parties bear the burden of supporting their motions and oppositions with the papers they

25  wish the Court to consider and/or by specifically referencing any other portions of the record for

26

27  _____

    [1]      In Defendant's notice of motion, filed concurrently with the Motion for Summary Judgment, Plaintiff was

28  provided with notice of the requirements for opposing a motion for summary judgment.  Klingele v. Eikenberry, 849 F.2d
    409, 411-12 (9th Cir. 1988).

1  consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

2  The Court will not undertake to scour the record for triable issues of fact.  Simmons v. Navajo County,

3  Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

4        In arriving at these findings and recommendations, the Court carefully reviewed and

5  considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts

6  and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference

7  to an argument, document, paper, or objection is not to be construed to the effect that this Court did

8  not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and

9  considered the evidence it deemed admissible, material, and appropriate.

10       A.       Summary of Relevant Allegations in First Amended Complaint

11       On or about August 23, 2007, Plaintiff was sent to Corcoran Hospital, where Doctor Smith

12  performed surgery on his left knee.  While in the recovery room, prison officials brought in another

13  inmate infected with "Staff" or "Saludatis."  (ECF No. 47, p. 3.)  The doctor ordered prison officials to

14  remove the infected man from the sterile, post-op room.  Later that day, Plaintiff was returned to

15  SATF-Corcoran II, Facility-E.

16       On or about August 24, 2007, Plaintiff's leg became swollen and painful in the morning.  He

17  reported to the Facility E Medical Clinic and showed medical staff his swollen leg.  Defendant

18  Conway looked at the swollen and discolored knee and said "there was nothing wrong with your knee,

19  so go back to your cell."  (ECF No. 47, p. 3.)  Plaintiff went back to his cell, but the swelling and pain

20  became worse.

21       On or about August 25, 2007, Plaintiff submitted an emergency medical request to see the

22  doctor at the Facility-E Medical Clinic.  Defendant Conway took his request, looked at his knee and

23  said "there is nothing wrong with your knee, stop being a cry-baby and go back to your cell."  (ECF

24  No. 47, p. 4.)  Plaintiff states that it is unclear whether the doctor was ever even informed because a

25  doctor never called to see him.  (ECF No. 47, p. 4.)

26       On or about August 27, 2007, Plaintiff showed his extremely swollen, discolored and painful

27  knee to housing Correctional Officer Rentigue.  Officer Rentigue acted immediately and had Plaintiff

28  sent to the Facility-E Medical Clinic.  The doctor looked at Plaintiff's knee and leg and ordered him

3

transported to Mercy Hospital.  At the hospital, Plaintiff was diagnosed with "advanced gangrene" or cellulitis.  (ECF No. 47, p. 4.)  Plaintiff was informed that his leg may have to be amputated.  He spent several days at the hospital and returned to Corcoran State Prison on September 5, 2007.  He arrived back at the Substance Abuse and Treatment Facility on or about September 19, 2007.

Plaintiff alleges that Defendant Conway, a licensed vocational nurse, acted with deliberate indifference to Plaintiff's serious medical needs.  Plaintiff contends that her actions resulted in his confinement in a wheelchair for more than a year and a half and his continued confinement to a walker, along with pain and distress due to the permanent loss of mobility.

**B.     Statement of Undisputed Material Facts**

Despite receiving notice of the requirements for opposing summary judgment, Plaintiff failed to file an opposition to the motion for summary judgment.  Plaintiff also failed to file a separate statement of disputed facts or statement admitting or denying the facts set forth by Defendant as undisputed.  Local Rule 260(b).  Accordingly, Defendant Conway's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified first amended complaint.  Jonas v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

1.     Plaintiff is a state prisoner serving a term of 180 years to life at the California Substance Abuse Treatment Facility and State Prison at Corcoran ("SATF"). (Ex. H to Appendix, Pl.'s Dep. at 11:15-18).

2.     Defendant B. Conway was employed by the California Department of Corrections and Rehabilitation ("CDCR") as a Licensed Vocational Nurse at SATF from 2007 to 2009. (Ex. A to Appendix, Conway Decl. ¶ 2.)

3.     Nurse Conway has no recollection of seeing Plaintiff on August 24, 2007, or August 25, 2007, regarding his knee.  Nurse Conway is familiar with Plaintiff because he came to the medical clinic regularly to receive medication from Nurse Conway.  (Ex. A to Appendix, Conway Decl. ¶¶ 3-4.)

4.     On August 23, 2007, Plaintiff had reconstructive surgery on his left knee.  Plaintiff was warned about the potential risks and complications of the surgery, including but not limited to

4

infection, bleeding, persistent pain, weakness, and stiffness, as well as tendon, vessel, or nerve damage.  Plaintiff agreed to the surgery, which was performed by Dr. David Smith.  There were no complications reported from the surgery.  (Ex. A to Appendix, Conway Decl. ¶ 6; Ex. C to Appendix, Operative Notes and Physician's Order, dated August 23, 2007.)

5.      On August 24, 2007, Plaintiff came to the Facility E Medical Clinic for a follow-up to his knee surgery, and was examined at approximately 7:50 p.m. by Nurse Carranza, who recorded Plaintiff's temperature, pulse, blood pressure, and other vital statistics.  A follow-up appointment was scheduled with the yard doctor, Dr. Enenmoh, and with orthopedics.  There were no notes from August 24, 2007, about severe redness in the knee area. Further, Plaintiff's vital signs did not show that he exhibited other symptoms of cellulitis, such as a fever or other flu-like symptoms such as aches and chills. (Ex. A to Appendix, Conway Decl. ¶ 7; Ex. B to Appendix, Ugwueze Decl. ¶ 5; Ex. D to Appendix; Plaintiff's Medical Records, dated August 24, 2007.)

6.      There is no evidence from Plaintiff's medical records that he submitted an emergency medical request form to Nurse Conway or any other medical staff member on August 25, 2007. (Ex. A to Appendix, Conway Decl. ¶ 8; Ex. B to Appendix, Ugwueze Decl. ¶ 6.)

7.      On August 27, 2007, Plaintiff came to the Facility E Medical Clinic with a lesion on his left leg, which had started bleeding that morning.  It was determined that Plaintiff had developed a 10 x 10 cm bulla, which is a fluid-filled blister.  As a result, Plaintiff was transferred to Mercy Hospital. (Ex. A to Appendix, Conway Decl. ¶ 9; Ex. E to Appendix; Plaintiff's Medical Records, dated August 27, 2007.)

8.      Plaintiff was never diagnosed with gangrene after his August 24, 2007 surgery. Plaintiff contracted cellulitis, a common skin infection caused by bacteria, in his left leg. Plaintiff received intravenous Unasyn while at Mercy Hospital for the cellulitis and the infection was resolved. (Ex. A to Appendix, Conway Decl. ¶ 10; Ex. F to Appendix; Plaintiff's Medical Records, dated September 5, 2007.)

9.      After Plaintiff was at Mercy Hospital, he was transferred back to Corcoran. (Ex. H to Appendix, Pl.'s Dep. at 68:1-5.)

10.      Plaintiff was examined by orthopedic surgeon Dr. David Smith on September 26, 2007. Dr. Smith noted that there was no more sign of infection, and reconstruction was stable.  There was no record that Plaintiff sustained permanent nerve injury as a result of his cellulitis infection.  (Ex. A to Appendix, Conway Decl. ¶ 11; Ex. G to Appendix; Plaintiff's Medical Records, dated September 26, 2007.)

11.      Plaintiff alleges that the day after he returned from knee surgery, his leg was "fire engine red" and there was a blister below his knee. (Ex. H to Appendix, Pl.'s Dep. at 30:9-22.)

12.      Plaintiff alleges that when he saw Nurse Conway, she looked at his leg, said nothing was wrong with it, and to go back and elevate his leg. (Ex. H to Appendix, Pl.'s Dep. at 31:21-25.)

13.      Redness and swelling are normal after knee surgery. Therefore, had Plaintiff come into the clinic with redness in his knee after surgery, it would have been reasonable for a nurse to instruct him to elevate his leg to reduce swelling and schedule him for a follow-up appointment with a doctor. Plaintiff's medical records do not show that he was exhibiting symptoms indicating that he had cellulitis, or any other signs of an emergency, on August 24, 2007.  (Ex. B to Appendix, Ugwueze Decl. ¶ 7.)

## III.   Discussion

### A.  Plaintiff's Eighth Amendment Claim

Liability under section 1983 exists where a defendant "acted under color of state law" and deprived the plaintiff "of a right secured by the Constitution or laws of the United States."  Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).  In order to be held liable, the defendant must have personally participated in the deprivation of the plaintiff's rights.  Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison

1    official must act with a "sufficiently culpable state of mind," which entails more than mere negligence,

2    but less than conduct undertaken for the very purpose of causing harm.  Farmer, 511 U.S. at 834-35.

3         The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious

4    medical need' by demonstrating that failure to treat a prisoner's condition could result in further

5    significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's

6    response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096.  A prison official does not

7    act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk

8    to inmate health or safety."  Farmer, 511 U.S. at 837.  "Deliberate indifference is a high legal

9    standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is

10   shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical

11   need" and the indifference caused harm, Jett, 439 F.3d at 1096.

12        In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's

13   civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere

14   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

15   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-

16   06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition

17   does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical

18   malpractice does not become a constitutional violation merely because the victim is a prisoner."

19   Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995).

20   Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See

21   Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Additionally, a prisoner's mere

22   disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez

23   v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

24        In this case, Defendant Conway contends that Plaintiff never sought medical care for his knee

25   from her, and therefore she never denied any alleged requests.  Defendant Conway relies on her

26   deposition testimony that she has no recollection of seeing Plaintiff on August 24, 2007, or August 25,

27   2007, regarding his knee.  However, Plaintiff alleges in his verified complaint that he sought treatment

28   from Defendant Conway on both August 24, 2007, and August 25, 2007.  (ECF No. 47, pp. 3-4.)

7

1    Therefore, the Court finds that there is a genuine dispute of material fact with regard to whether

2    Plaintiff sought medical care for his knee from Defendant Conway on August 24 and August 25, 2007.

3    The Court now turns to the remainder of Defendant Conway's arguments.

4         *August 24, 2007*

5         Defendant Conway next contends that evidence from Plaintiff's medical records indicates that

6    Plaintiff did not have a serious medical need on August 24, 2007, the first day he claims that he saw

7    Defendant Conway, or that Defendant Conway knew about the alleged serious medical need.

8         Plaintiff alleges in his verified complaint that on August 24, 2007, his leg became swollen and

9    painful in the morning.  He reported to the Medical Clinic where Defendant Conway allegedly looked

10   at his swollen and discolored knee, said there was nothing wrong and told Plaintiff to return to his cell.

11   (ECF 47, p. 3; SUMF #13, 14.)  Plaintiff also alleges that his leg was "fire engine red" and there was a

12   blister below his knee. (SUMF #11.)  However, the undisputed evidence shows that Plaintiff was

13   examined by Nurse Carranza that same evening, at approximately 7:50 p.m., as part of a post-

14   operative check-up.  The records corresponding with that examination did not identify severe redness

15   in the knee area, and Plaintiff's vital signs did not show that he exhibited other symptoms of cellulitis,

16   such as a fever or other flu-like symptoms such as aches and chills.  (SUMF #5, 13).

17        As the medical records do not reflect that Plaintiff was experiencing symptoms of cellulitis or

18   severe redness during the evening of August 24, 2007, the Court finds that a reasonable jury could not

19   conclude that Defendant Conway knew earlier in the day that Plaintiff faced an excessive risk of

20   serious harm and disregarded that risk.  Farmer, 511 U.S. at 837 (prison official does not act in a

21   deliberately indifferent manner unless the official "knows of and disregards an excessive risk to

22   inmate health or safety").

23        Further, Plaintiff alleges that when he saw Defendant Conway, she looked at his leg, said

24   nothing was wrong with it, and to go back and elevate his leg.  (SUMF #12.)  Plaintiff cannot

25   demonstrate that Defendant Conway acted with deliberate indifference in returning Plaintiff to his cell

26   with instructions to elevate his leg.  In contrast, Defendant Conway has presented expert testimony

27   indicating that redness and swelling are normal after surgery and that telling an individual to elevate

28   his leg to reduce redness and swelling would be a medically reasonable response.  (SUMF #13.)

8

1   Plaintiff has not provided expert testimony demonstrating that Defendant Conway's alleged response

2   was improper or unreasonable.  See, e.g., Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir.

3   1988) (plaintiff failed to provide expert testimony to counter defendants' expert evidence that they

4   "were not even negligent, much less 'deliberately indifferent'").

5          *August 25, 2007*

6          Defendant Conway next argues that the evidence shows that Plaintiff never sought medical

7   care on August 25, 2007, because there is no record that he submitted a health care request form that

8   day to Defendant Conway or to any other medical staff.  (SUMF #6.)  In Plaintiff's verified complaint,

9   he alleges that he submitted an emergency request and Defendant Conway took it, but it is unclear

10  whether Defendant Conway informed the doctor about the request.  (ECF No. 47, p. 4.)  From

11  Plaintiff's allegations, a reasonable jury could infer that Defendant Conway may not have submitted

12  Plaintiff's medical request form, which would explain its absence from the medical records.

13         Assuming, without deciding, that Plaintiff presented himself to Defendant Conway on August

14  25, 2007, Plaintiff's allegations indicate that Defendant Conway looked at his leg, found nothing

15  wrong and sent Plaintiff back to his cell.  (ECF No. 47, p. 4.)  Consistent with Defendant Conway's

16  determination on August 25, 2007, the undisputed evidence shows that Plaintiff did not have any

17  symptoms of cellulitis or redness the prior evening, August 24, 2007, and that Plaintiff did not seek

18  any treatment or medical help the following day, August 26, 2007.  Plaintiff's complaint does not

19  indicate that Defendant Conway was or should have been aware that Plaintiff had cellulitis at that

20  time, and there is an absence of evidence from Plaintiff, which likely would have to be presented

21  through expert testimony, indicating that he had such symptoms.  Accordingly, the Court finds that a

22  reasonable jury could not conclude that Defendant Conway knew that Plaintiff faced an excessive risk

23  of serious harm on August 25, 2007, and disregarded that risk.  Farmer, 511 U.S. at 837.

24         Furthermore, the undisputed evidence belies Plaintiff's claim that he was diagnosed with

25  gangrene or that he suffered any long term effects as a result of the cellulitis.  (SUMF # 8, 10.)  Again,

26  Plaintiff does not have an expert to raise a genuine dispute of material fact regarding his diagnosis and

27  these claims.

28

9

For these reasons, the Court finds that Defendant Conway is entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim.

**B.  Qualified Immunity**

Defendant argues that she is entitled to qualified immunity because she has neither violated Plaintiff's constitutional rights, nor could she have recognized that her actions could have violated Plaintiff's constitutional rights.

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Ashcroft v. al-Kidd, ––– U.S. ––––, ––––, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (citations omitted).  To determine if an official is entitled to qualified immunity the court uses a two part inquiry.  Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001) overruled in part by Pearson v. Callahan, 555 U.S. at 236, 129 S.Ct. at 818. The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Ashcroft, 131 S.Ct. at 2080.  This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. Id. at 2083; Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir.2011).  The inquiry as to whether the right was clearly established is "solely a question of law for the judge."  Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir.2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir.2009)). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236, 129 S.Ct. at 818.

As noted above, the Court finds that there has not been a constitutional deprivation. Accordingly, Defendant Conway is entitled to qualified immunity.

**C. Plaintiff's State Law Medical Negligence Claim**

In addition to his federal constitutional claim, Plaintiff alleges a state law claim for medical negligence. Defendant Conway moves for summary judgment on Plaintiff's state law claim.

"The district courts may decline to exercise supplemental jurisdiction over a claim ... if—... (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As the Court recommends summary judgment on Plaintiff's Eighth Amendment claim, the Court also recommends declining supplemental jurisdiction over Plaintiff's state law claim.

**IV.   Conclusion and Recommendation**

For the reasons discussed above, the Court HEREBY RECOMMENDS as follows:

1.   Defendant Conway's motion for summary judgment, filed on January 14, 2013, be GRANTED;

2.   Summary judgment be GRANTED in favor of Defendant and against Plaintiff;

3.   Supplemental jurisdiction over Plaintiff's state law claim be DECLINED; and

4.   Judgment be entered accordingly.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   __**August 12, 2013**__            ___/s/ Barbara A. McAuliffe___
                                           UNITED STATES MAGISTRATE JUDGE